IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

JAMES B. PETERSON,  )
                      Case No. 09 C 50084  )
            Plaintiff,  )
                                    )    Hon. P. Michael Mahoney
v.                                     )    U.S. Magistrate Judge

MICHAEL J. ASTRUE,  )
Commissioner of Social Security,  )
            Defendant.  )

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

James B. Peterson ("Claimant") seeks judicial review of the Social Security Administration Commissioner's decision to deny his claim for Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act, and Supplemental Security Income ("SSI") benefits, under Title XVI of the Social Security Act. *See* 42 U.S.C. § 405(g). This matter is before the Magistrate Judge pursuant to the consent of both parties, filed on July 17, 2009. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

**II.    Administrative Proceedings**

On July 28, 2006, Claimant applied for DIB and SSI, alleging that he was disabled as of December 31, 2000[1] due to mild mental retardation and a back injury. (Tr. 33, 53.) This initial

---

[1] At the Administrative Law Judge's hearing, this disability onset date was amended to September 30, 2003, the date on which Claimant was last insured. (Tr. 327.)

DIB and SSI application was denied on October 17, 2006. (Tr. 49.) Claimant's application was denied a second time, upon reconsideration, on March 1, 2007. (Tr. 59.) Claimant then filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on March 13, 2007. (Tr. 66-67.) The hearing took place before ALJ Cynthia M. Bretthauer, via video teleconference between Evanston, Illinois and Rockford, Illinois, on August 7, 2008. (Tr. 322.) Claimant appeared and testified in Rockford with his attorney present. (Tr.322, 324-325.) Vocational expert ("VE"), William Newman, also testified before the ALJ. (Tr. 322, 324.)

On September 18, 2008, the ALJ found that Claimant was not disabled, and therefore, denied his claims for DIB and SSI. (Tr.36-48.) In response, Claimant filed a Request for Review with the Social Security Administration's Office of Hearing and Appeals on September 25, 2008. (Tr. 5.) On February 20, 2009, the Appeals Council denied Claimant's Request for Review. (Tr 5-7.) As a result of this denial, the ALJ's decision is considered the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 404.981, 416.1455, 416.1481. Claimant now files a complaint in this Federal District Court, seeking judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## III.    Background

Claimant was born on December 31, 1965, and was forty-three years old when he appeared at the ALJ hearing. (Tr. 33, 322.) Claimant was approximately six feet and three inches tall, and weighed approximately 288 pounds at the time of his initial application. (Tr. 118, 262.) As of the hearing, Claimant lived with his ex-wife in an apartment in Rockford, Illinois. (Tr. 327-328.) Claimant earned his high school degree while in special education classes, but took

"regular classes" as well. (Tr. 329.) He speaks English fluently, and testified that he is able to read and write. (Tr. 190, 335.)

According to Claimant's testimony, he has an Illinois driver's license, although it was suspended at the time of the hearing, due to a citation for driving without valid vehicle registration. (Tr. 328-329.) However, he otherwise frequently drives himself to work. (Tr. 329.) The ALJ joked that Claimant "should have a chauffer['s] license," after he described how he was often designated as "the driver," and frequently drove his ex-wife and mother to their regular doctors' appointments. (Tr. 335.) Claimant maintained that he and his ex-wife share cooking and cleaning duties. (Tr. 355.) Washing the dishes and doing laundry are also commonly shared household chores. (Tr. 335.) Claimant testified that he does the grocery shopping, receives food stamps, and will go out to eat only if he has the money to do so. (Tr. 336.) He also takes part in the Rockford Special Olympics, and currently competes in softball, bowling, volleyball, and basketball. (Tr. 336.) In addition, Claimant helps his mother by mowing her lawn "off and on." (Tr. 335.) During his testimony, Claimant reported no difficulty in performing any of these tasks.

Over the past twenty years, Claimant has held several occupations. (Tr. 192.) From 1991 to 1996, he was employed as a "paint sprayer's assistant" at Expressions in Wood. (Tr. 192, 333.) In 1996, he worked as a "laborer," or car porter: performing odd jobs such as "doing the carwash, [and] running parts" for Burton Motor Sales. (Tr. 192, 334.) Throughout the years, Claimant worked "off and on" as a janitor for Anderson Automotive (1996) and the County of Winnebago (1998). (Tr. 192.) From 1997 to 2008, Claimant delivered newspapers for the Rockford Register Star. Claimant also worked as a "materials handler" for Illinois Growth Enterprises in 2005. (Tr. 192, 331.) At the time of the hearing, Claimant was employed as a

janitor for Tri-County Cleaning. (Tr. 329-330.) Claimant expressed no difficulty in performing his duties, and communicated that had he been offered full-time employment, he would be able to work full-time. (Tr. 331, 334.) In requesting judicial review, Claimant maintains that he is unable to work due to mild mental retardation, obesity, and back pain. (Tr. 53.)

## IV. Medical History

### 1. Mental Retardation

Claimant's record contains documentation from Harlem Consolidated Schools Special Education Department (hereinafter referred to as "Harlem"), dating from 1972 to 1984. (Tr. 233-246.) On February 19, 1974, in a letter written to Harlem's principal, Clinical Psychologist, Dr. Thomas Hollan, reported:

> [a] psychological evaluation indicated that [Claimant's] functioning is within the educably mentally handicapped range. The Wechsler Intelligence Scale for Children provided a [V]erbal [S]cale [I.Q.] of 72, a [P]erformance [S]cale [I.Q.] of 69, and a [F]ull-[S]cale [I.Q.] of 68. This was in keeping with the Stanford-Binet [I.Q.] of 73. [Claimant] is in the upper[-]level of the educably mentally handicapped range and shows specific deficiencie [sic] that would benefit from special learning disability tutoring.

(Tr. 236.) (emphasis added).

On October 2, 2006, Claimant underwent a Social Security Administration psychological evaluation performed by Dr. John L. Peggau, Psy. D.. (Tr. 264.) Dr. Peggau reported Claimant's examination results as follows:

> [Claimant] was administered the Wechsler Adult Intelligence Scale-III. [He] obtained a Full-Scale I.Q. score of 61. This score is at the 0.5 percentile and [is] in the extremely low range. At the 95% confidence interval the range is 58-66. This score indicates a substantial limitation in [Claimant's] intellectual and cognitive

4

> functioning, relative to those his age. . . . [Claimant] obtained a
> Verbal I.Q. score of 61. . . . [He] obtained a Performance I.Q. score
> of 68.

(Tr. 265-266.)

In consideration of these results, Dr. Peggau added that "[C]laimant's scaled scores reflect gross limitations [in] all areas evaluated. All of his scores were below low average." (Tr. 266.)

### 2. Back Pain & Obesity

Claimant entered O.S.F. Saint Anthony Medical Center (hereinafter referred to as "O.S.F."), complaining of "sharp," but "moderate" pack pain, on May 17, 2006. (Tr. 248.) Claimant asserted that he injured his back while lifting heavy boxes at work. (Tr. 248.) According to the records provided, Claimant then weighed "281.5 pounds" and stood six feet and five inches tall. (Tr. 249.) He was seen by Dr. Charles Washington, M.D., who reported that Claimant had "[a]cute [m]yofascial [s]train" in the lumbar area. (Tr. 249.) Claimant was discharged after receiving a prescription for Motrin, Norflex, and Vicodin. (Tr. 249.)

On June 5, 2006, Claimant returned to O.S.F. for a follow-up appointment. (Tr. 258.) His weight was reported as 282 pounds. (Tr. 258.) Claimant complained of back pain and tenderness. (Tr. 258.) However, the doctor noted that Claimant had been bowling on June 3, 2006, and reported no problems with his back at that time. (Tr. 258.) It was reported that Claimant "[m]ay [r]eturn to regular duty," after continuing '[l]ight duty" for two weeks. (Tr. 258-259.)

Claimant entered O.S.F., complaining of radiating back pain, on September 26, 2006. (Tr. 262.) Claimant's weight was reported as 288 pounds. (Tr. 262.) Dr. Robert Pierce, M.D., ordered an examination of Claimant's back, finding a "slight anterior compression of the T12 vertebral body of undetermined age[,] but spur formation at that level indicat[ing] that this may

5

be old." (Tr. 263.) Cheri Helmold, N.P., diagnosed Claimant with "[l]umbar strain," prescribed Naprosyn for the pain, and "[e]xtended his work excuse through Wednesday night." (Tr. 262.) Claimant was asked to follow-up later that week. (Tr. 262.)

On September 29, 2006, Claimant returned to O.S.F. with back pain. Much of the handwriting in the record is illegible. (Tr. 261.) However, the treating physician briefly notes:

- "Back strain" (Tr. 261.)
- "Still working. (is [illegible] ok)" (Tr. 261.)
- "Wedge compression fx on Xray [sic]" (Tr. 261.)

The final record available concerning Claimant's back pain is also from O.S.F., dated October 13, 2006. (Tr. 260.) At that time, Claimant's weight was reported as 292 pounds. (Tr. 261.) Though much of the handwriting on the medical form is difficult to discern, it was reported that Claimant's "[b]ack pain [is] better." (Tr. 260.)

## V.  Standard of Review

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing, or order a hearing of additional evidence. 42 U.S.C. § 405(g). The ALJ's legal conclusions are reviewed *de novo*. *Binion v. Charter*, 108 F.3d 780, 782 (7th Cir. 1997). However, this court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the [ALJ]." *Id.* The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case are entrusted to the Commissioner. *Schoenfeld v. Apfel,* 237 F.3d 788, 793 (7th Cir. 2001) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the Commissioner.")

6

If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C § 405(g); *see also Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). "Substantial evidence" is "evidence which a reasonable mind would accept as adequate to support a conclusion." *Binion,* 108 F.3d at 782. If the ALJ identifies supporting evidence in the record and builds a "logical bridge" from that evidence to the conclusion, the ALJ's findings are supported by substantial evidence. *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). However, if the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## VI.     Framework of Decision

"Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C § 423(d)(3).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity, (2) whether the claimant suffers from a severe impairment, (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments, (4) whether the claimant is capable of performing work which the claimant performed in the past,

7

and (5) whether any other work exists in significant numbers in the national economy which accommodates the claimant's residual functional capacity ("RFC") and vocational factors. *See* 20 C.F.R. § 404.1520.

## VII. Analysis

**1. The ALJ did not build a logical bridge between the evidence and her determination that Claimant was not disabled.**

### A. Step One: Claimant is not currently engaged in substantial gainful activity.

In the Step One analysis, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties and is done, or intended to be done, for pay or profit. *See* 20 C.F.R. § 404.1510. The Social Security Administration has developed earnings guidelines that determine each year an average monthly earnings amount that aids in a determination as to whether a claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1574. For example, if a claimant's earnings were below an average of $700 per month for the year 2000, such earnings would ordinarily show that the claimant has not engaged in substantial gainful activity. 20 C.F.R. § 404.1574(b)(2)-(3). For the year 2010, that amount is $1000 per month.[2] If the claimant is engaged in substantial gainful activity, he or she is found "not disabled" regardless of medical condition, age, education, or work experience, and the inquiry ends. If the claimant is not engaged in substantial gainful activity, the inquiry proceeds to Step Two.

---

[2] Full earnings chart available at http://www.ssa.gov/OACT/COLA/sga.html.

Here, the ALJ noted that claimant earned yearly amounts of $5,024, $6290, and $2068 for the years 2005, 2006, and 2007, respectively. (Tr. 41.) The ALJ also noted that Claimant was a self-employed newspaper carrier where he earned $672 in 2006 and $2,841 in 2007. Lastly, the ALJ noted the part-time nature of Claimant's current janitorial work, which comprised 7.5 hours per week. Based on this information, the ALJ determined that Claimant's past work activity did not constitute substantial gainful activity at any time since Claimant's onset date of September 30, 2003. (Tr. 41-42.) Neither party disputes this finding, and it is supported by the aforementioned earnings amounts found in the record. As such, this court affirms the ALJ's Step One determination, and proceeds to Step Two.

### B. Step Two: Claimant Suffers From a Severe Impairment.

Step Two requires a determination whether the claimant is suffering from a severe impairment. A severe impairment is one which significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. *See* 20 C.F.R. § 404.1520(c). If the claimant suffers a severe impairment, then the inquiry moves on to Step Three. If the Claimant does not suffer a severe impairment, then the claimant is found "not disabled," and the inquiry ends.

In this case, the ALJ found that Claimant had the following severe impairments: "mild mental retardation and obesity." (Tr. 42.) No one challenges this determination, though it becomes significant later in the ALJ's opinion.

The ALJ seems to contradict this Step Two finding within the Step Three analysis: "[C]laimant's obesity *has not* been found to cause any limitation in [C]laimant's ability to

perform basic work activities, nor has [C]laimant alleged any resulting limitation." (Tr. 43.) (emphasis added).

Neither party disputes the ALJ's Step Two determination, and therefore, the court will affirm the ALJ's finding that Claimant's mild mental retardation and obesity are severe impairments.

> **C. Step Three: It is unclear whether Claimant's impairments meet or medically equal an impairment in the commissioner's listing of impairments.**

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). The Listings describe, for each of the body's major systems, impairments which are considered severe enough *per se* to prevent a person from adequately performing any substantial gainful activity. *See* 20 C.F.R. §§ 404.1525(a); 416.925(a). The Listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *See Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to a listed impairment, then the claimant is found to be disabled, and the inquiry ends. If not, the inquiry moves on to Step Four.

Here, Claimant maintains that the ALJ should have found that Claimant's mental retardation and obesity meet Section 12.05 C. of the Listings. Under that section, the required level of severity for mental retardation is met when a claimant has a "verbal, performance, or full scale [I.Q.] of 60 through 70 *and* a physical or other mental impairment imposing an *additional and significant work-related limitation of function*." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05 C. (emphasis added). In essence, Section 12.05 C. demands that a two-pronged test be satisfied

before finding a disability based on mental retardation: (1) that Claimant must have an I.Q. score between 60 and 70, and (2) that an additional impairment significantly limits Claimant's work-related functioning. *See Id.*

There is substantial evidence to show that Claimant meets the "first prong" of this test; Dr. Peggau reports that Claimant has a Full-Scale I.Q. score of 61. (Tr. 43, 265-266.) However, there is little evidence to support a finding that Claimant's obesity imposes a significant work-related limitation of function, and satisfy the "second prong" of 12.05 C.: "[C]laimant testified that he cooks, does his laundry, at the Laundromat, drives his wife and mother to doctor appointments, and mows his mother's lawn. He also testified he attends practice for the Special Olympics every Saturday." (Tr. 43.) The ALJ stated: "[C]laimant's obesity has not been found to cause any limitation in [C]laimant's ability to perform basic work activities, nor has [C]laimant alleged any resulting limitation." (Tr. 43.) This is in marked contrast with the ALJ's finding on obesity at Step Two.

At Step Two, the ALJ claims that Claimant's obesity is a severe impairment that, *by definition*, significantly limits Claimant's physical ability to perform basic work activities. (*See* 20 C.F.R. § 404.1520(c), Tr. 42.) Here at Step Three, the ALJ states that "[C]laimant's obesity *has not* been found to cause any limitation in [C]laimant's ability to perform basic work activities." (Tr. 43.) (emphasis added). The ALJ's findings at Step Two and Step Three are contradictory. This substantial discrepancy must be remanded.

Seventh Circuit case law clearly equates the meanings of the "additional and significant work-related limitation of function" requirement under § 12.05 C. and Step Two's "severity" standard: "If the additional impairment(s) does not cause limitations that are 'severe' …, we will

11

not find that the additional impairment(s) imposes 'an additional and significant work-related limitation of function." *Higgins v. Barnhart*, 42 Fed.Appx. 846, 849-850, 2002 WL 1752231 *3 (7th Cir. 2002), quoting 20 C.F.R. Part 404, Subpart P, Appendix, § 12.00A. In short, if the ALJ is correct that Claimant's obesity is a severe impairment under Step Two, then it appears as though he would meet the "additional and significant work-related limitation" listing requirements of 12.05 C. in Step Three, and he should automatically be found disabled.

In light of these inconsistencies, the court remands the ALJ's Step Three decision for further administrative proceedings in order to cure the contradictory Step Two and Step Three determinations. However, this judicial review will proceed to Step Four, as Claimant presents additional issues concerning the ALJ's Step Four determination.

    **D.**    **Step Four: Based on Claimant's residual functional capacity, he is capable of performing work which he has performed in the past.**

At Step Four, the Commissioner determines whether the claimant's RFC allows the claimant to return to past relevant work. RFC is a measure of the abilities which the claimant retains despite his or her impairment. *See* 20 C.F.R. § 404.1545(a), 416.945(a). The RFC assessment is based upon all of the relevant evidence, including: objective medical evidence, treatment, physicians' opinions and observations, and the claimant's own statements about his or her limitations. *See Id*. Although medical opinions bear strongly upon the determination of the RFC, they are not conclusive. The determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).

"Past relevant work" is defined as such work previously performed by the claimant that has constituted substantial gainful activity and satisfied certain durational and recency requirements. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a); Social Security Ruling 82-62. If the claimant's RFC allows the claimant to return to any past relevant work, the claimant will be found "not disabled" and the inquiry ends. If the claimant is unable to return to past relevant work, the inquiry proceeds to Step Five.

The ALJ found that Claimant's RFC allowed him "to perform work at all exertional levels, of an unskilled nature: involving simple, [one or two] step repetitive tasks; requiring little independent judgment; and involving only routine changes in the work setting." (Tr. 44.) Neither party disputes this finding.

Based on Claimant's RFC and the VE's testimony, the ALJ found that Claimant is capable of performing his past relevant work as "a material handler; a paint-sprayer assistant; a newspaper carrier; a custodian/cleaner; and a car washer/car porter." (Tr. 47.) Claimant maintains that the past relevant work in this finding is erroneously characterized. The court agrees in part.

As stated above, past relevant work *must* constitute substantial gainful activity. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a); Social Security Ruling 82-62. The ALJ did not make a finding as to whether certain jobs that Claimant performed prior to his alleged onset date, including positions as a laborer, car porter, or paint sprayer's assistant, were substantial gainful activity. However, the ALJ did make a finding at Step One that work Claimant performed after his alleged onset date as a material handler, newspaper carrier, and custodian/cleaner did *not* constitute substantial gainful activity. (Tr. 41-42.) Yet, at Step Four, she found Claimant capable

13

of performing past relevant work as a material handler, a paint-sprayer assistant, a newspaper carrier, a custodian/cleaner, and a car washer / car porter. (Tr. 47.) Having already determined that the material handler, newspaper carrier, and custodian/cleaner positions did not rise to the level of substantial gainful activity, it appears the ALJ should have excluded these jobs from consideration as past relevant work. Thus, the ALJ's Step Four findings appear to present a contradiction with her Step One finding.

This error may be harmless, as the ALJ lists two other positions in her Step Four determination: a paint sprayer's assistant and a car washer / car porter. (Tr. 42.) Based upon the evidence provided in the record, both of these occupations may qualify as past relevant work. If Claimant is found to be able to perform *any* past relevant work, he must be found "not disabled." The court need not make a finding as to the ALJ's Step Four analysis at this time, but raises the issues discussed herein in order that they may be addressed upon remand if necessary.

## VIII. Conclusion

In light of the foregoing reasons, 1the Commissioner's motion for summary judgment is denied and Claimant's motion for summary judgment is granted in part. This case is remanded as to the Commissioner's Step Two and Step Three determinations. The court instructs the ALJ to conduct further administrative proceedings in accordance with this opinion.

                                                        **ENTER:**

                                                        **P. Michael Mahoney, Magistrate Judge**
                                                        **United States District Court**

**DATE: December 22, 2010**